### MATTHEWS *v.* MURCHISON and others.

*(Circuit Court, E. D. North Carolina.)*

1. RAILROADS—REORGANIZATION—DISSOLUTION—BONDHOLDERS BOUND BY ACQUIESCENCE.

   A bondholder of a former organization has no standing in chancery to dissolve the present organization of a railroad company, for which his agent had voted his bonds, it was alleged, in excess of authority, and to enforce a different plan, where it appears that he had known of what his agent was doing, but had not dissented, and that he had accepted his share of the bonds of the new organization, had offered to buy and sell, and had brought suit for them. Such conduct ratified the act; or, inducing others to believe he had acquiesced in the organization, worked estoppel.

2. SAME—CAPACITY TO OWN SHARES—OBJECTION—BY WHOM TO BE RAISED.

   A bondholder of one railroad company is not the proper person to object to the right of another road to own shares of the stock of the former. If it exceeded its corporate power in purchasing, they belong to the vendor; if it only could not hold, the state incorporating is the party offended.

3. SAME—INTENTION TO SACRIFICE INTERESTS.

   A court of equity will not interfere when it is alleged that the parties in con-
   trol of one road intend to sacrifice its interest to that of another, if there is no
   proof of the fact, and the complainant is wanting in equity on the merits, and
   no irreparable injury is threatened, and the road is able to respond in damages.

In Equity.

BOND, J.   This is a bill filed to dissolve and declare void the organ-
ization of the Carolina Central Railway Company, and to reorganize
it and establish it under a new plan, alleged to have been the only one
to which the plaintiff, who is a large bondholder of a former organi-
zation, ever agreed, and for injunction and the appointment of a re-
ceiver meantime.   The case is not submitted on its merits, but upon
this preliminary motion.   The evidence is very full, and the record
a very large one.   The motion has been thoroughly argued, and ably-
prepared briefs submitted, and the court has given them patient
study.   The facts, so far as it is necessary to recite them for the
present purpose, are these:

The complainant was the owner of 1,194 bonds, each for the sum
$1,000, secured by a first mortgage on the Carolina Central Railway
Company, all its properties and franchises, and she likewise held
second-mortgage bonds issued by that company to the amount of
$2,550,000.   The company made default in the payment of the in-
terest upon its bonded debt, and an action was brought in the supe-
rior court of New Hanover county, North Carolina, to foreclose the
mortgage and sell the property, which that court decreed should be
done, and the sale was made accordingly on the thirty-first day of
May, 1880.   There is no question about the regularity of these pro-
ceedings.   At the sale, Francis O. French, Arthur B. Graves, David
R. Murchison, James S. Whedbee, and Andrew V. Stout, a commit-
tee appointed by the first-mortgage bondholders, became the pur-
chasers.   The court directed the commissioners who made the sale
to make a deed to these purchasers, who were to be a corporation, by
such name as they might see fit to adopt, in conformity to the laws
of North Carolina.   The old corporation was dissolved, and a new
one formed under the corporate name, "Carolina Central Railway
Company," to which all the property and franchises of the old cor-
poration were conveyed free, and discharged from all former liens and
incumbrances.   Prior to this sale there had been consultation among
the bondholders respecting the sale and purchase of the road, and the
plan of reorganization to be followed when the purchase was made.
It is in respect to these plans that the complainant makes complaint.

In our opinion Col. Matthews, the husband of Virginia B. Matthews, was, as appears from the whole case, if not the real owner of these securities, the complainant's plenary attorney, and the case must be treated as if he were the plaintiff, or as if all his acts and declarations were those of his wife.

Before the twelfth of May, 1880, during the pendency of the foreclosure suits, several plans of reorganization had been agreed upon between Graves and Matthews,—two, at least. These both gave an undue advantage to the old second-mortgage bonds,—that is, to Matthews,—and it is to be presumed that it was impossible to get the consent of the first-mortgage bondholders to them. At any rate they were abandoned, and complainant signed a paper authorizing Francis O. French, a party defendant hereto, to designate a plan, and making him substantially arbitrator as to the question between the old second and first mortgage bondholders. This was on the fifteenth of May, 1880. On or before December 12, 1879, Mrs. Matthews had owned $1,690,000 of the old first-mortgage bonds. On that day she sold $500,000 of them to R. A. Lancaster & Co., hypothecated $500,000 more on a loan from French, Stout & Graves, and gave the last-named persons a power of attorney for five years, to vote on $1,000,000 of her bonds, including the $500,000 hypothecated ones. The power of attorney was given on the condition that the attorneys should consent to and approve the plan of reorganization of the company in accordance with the plan annexed. This plan was modified by plaintiff on the twenty-seventh of February, and abrogated on the fifteenth of May, 1880, French being authorized to designate a new plan, as above stated.

Before this, however, on the twelfth of May, 1880, more than five-sixths of the old bondholders had entered into an agreement looking to the purchase of the Carolina Central Railroad at the foreclosure sale. This paper was signed by complainant, among others, and was binding upon all who signed it, and the court, as far as the nature of the case permitted, would enforce it. The purchase was made under this instrument, and no organization not effected in accordance with its terms would have had the consent of the parties in interest while it remained in force. It provided, among other things, that French, Murchison, Graves, and Whedbee, with power to add a fifth to their number, should be a committee to purchase at the foreclosure sale, and in case they did they were to prepare and submit to the subscribers a plan for the reorganization of the company, which plan should be binding when approved by two-thirds in amount of the

bonds. This was signed by Mrs. Matthews on the twelfth of May, and three days afterwards she signed the agreement that French might designate a new plan. These two papers were of course in the mind of Mrs. Matthews, or rather of her husband, at the same time, and it is impossible to doubt she meant that the plan was to follow the course of the former, and be submitted by the committee to and be approved by the requisite number of first-mortgage bonds. This could not be done till after the purchase of the road.

It is true that before that time French did draft a plan, and the requisite number of bondholders signed an authorization to the committee to carry it out. The plan, however, was never presented by the committee, and was never carried out. We are now asked to enforce it. It is plain we ought not to do so. It is not within the terms of the instrument of May 12, 1880. French had not exhausted his power under the instrument making him arbitrator, and when he subsequently presented the plan marked "F" he was acting under that authority. This plan differed from plan "C" in but two points: it added to the definition of the word "income" the words "all questions of expenditure within the discretion of the board of directors," and it changed the attachment of the stock and its amount. Neither of these changes is material. The discretion mentioned is, of course, a legal discretion, and the board would have had that without giving it in express words; and the change in the attachment of the stock from one set of bonds to the other is of no importance to complainant, as she got the same share under one agreement or plan as she would have done under the other. The company has been organized; its new bonds and stock issued and sold. The complainant has received her proportion of bonds in the new organization without objection, and has offered to sell the whole or part of it; yet, if the complaint she now makes be true, she knew the company was illegally organized and had no power to issue either bonds or stock. French acted within the scope of his power of attorney. The plan "F," which he voted for in the presence of his associates Graves and Stout, was sent to Matthews, who was then in Europe, as is evident from Matthews' letter to Robinson, of sixteenth of September; and even if French had exceeded his power of voting for Matthews, he professed to act under it; and complainant and her husband knew it, and their conduct, after such knowledge, ratified her act. The complainant received the new bonds. She attempted to buy more, and offered to sell them, and brought suit for some she claimed to be hers. All these things were done after the knowledge of French's act. To

come into a court of equity and ask it to set aside the organization of the new company, under these circumstances, and to take its property out of its hands and put into those of a receiver, is little else than monstrous. Every act of complainant and her husband, after the vote of French, led the public and the committee of purchase and organization to suppose they acquiesced.

The law and good conscience required that if they disapproved French's conduct, and denied his power to act as he had done, then to say so at once, and not mislead everybody by dealing in the worthless securities which they secretly meant to repudiate. Whether this is an estoppel or a ratification is of little consequence; not to regard it as one or the other would work the greatest injustice to the other bondholders. We think this decides the matter, and is fatal to complainant's claim for a receiver now or at any other time under her bill of complaint. The bill charges that the Seaboard & Roanoke and Raleigh & Gaston Railroads have no right to own shares in the reorganized Carolina Central Railway Company. This is of no importance to complainant. If the company had no right to purchase shares, then those they sold belong to Murchison's estate, from whom they bought them, and if they could purchase and not hold them and are exceeding their corporate powers, the state of North Carolina is the party offended. The bill charges that the parties holding the control of the company intend to sacrifice its interest to that of the Raleigh & Gaston and Seaboard roads, but there is no proof whatever of the fact, and even if the complainant had more equity, on the merits there is no irreparable injury threatened, and the road is solvent and abundantly capable of responding in damages to the complainant.

The motion for injunction and receiver is denied. We have not copied into this opinion the papers referred to in it. It would be useless to do so for the sake of the counsel, who are familiar with the record, and to do so for the benefit of the profession would make the paper as large as the record, and the profession would never see it, for it would never find a printer.